IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| In re: | Case No. 3:23-bk-03350 |
| JUDSON WHEELER PHILLIPS, | Chapter 7 |
| Debtor. | Hon. Randal S. Mashburn |
| DIANA MEY, | |
| Plaintiff, | |
| v. | Adv Proc. No. _____ |
| JUDSON WHEELER PHILLIPS, | |
| Defendant. | |

**Complaint Objecting to the Dischargeability of Debt
Under 11 U.S.C. § 727(a)(4)(A) and §§ 523(a)(6) and (c)(1)**

**Introduction**

1. Plaintiff Diana Mey ("Plaintiff" or "Ms. Mey"), by and through undersigned counsel, files this Complaint ("Complaint") seeking a judgment of nondischargeability under 11 U.S.C. § 727(a)(4)(A) against Defendant Judson Wheeler Phillips ("Defendant").

2. Alternatively, Plaintiff seeks a judgment of nondischargeability under §§ 523(a)(6) and (c)(1) for a judgment against Defendant, signed and entered on July 5, 2022, in the United States District Court for the Northern District of West Virginia in the amount of eight hundred twenty-eight thousand, eight hundred and one dollars and thirty-six cents ($828,801.36) (the "Judgment"). A true and correct copy of the Judgment is attached hereto as **Exhibit A**. Exhibit A is incorporated by reference. Plaintiff also seeks a judgment of nondischargeability under 11 U.S.C. § 523(a)(6) and § 523(c)(1) against Defendant, for judgments against Defendant for attorney's fees and costs, signed and entered on June 29, 2023, and July 26, 2023, in the Northern

1

District of West Virginia, in the total amount of six hundred forty-nine thousand, five hundred sixty dollars and fifty-six cents ($649,560.56) (together, the "Attorney Fee Awards"). True and correct copies of the Attorney Fee Awards are attached hereto as **Exhibit B** and **Exhibit C**. Exhibits B and C are incorporated by reference.

3. The Judgment and Attorney Fee Awards were entered in a case captioned *Diana Mey v. Castle Law Group, PC, et al.*, 5:19-cv-185-JPB-JPM (N.D.W. Va.), in which Mr. Phillips, his business partners, and several their shared entities (hereafter, collectively "Defendants") were named defendants. A true and correct copy of the Second Amended Complaint in this action is attached hereto as **Exhibit D.** Ms. Mey's predicate claims concerned Defendants' violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 and 47 C.F.R. § 64.1200(d) ("TCPA"), as well as violations of the West Virginia Consumer Credit and Protection Act (WVCCPA) applicable to telemarketing (W. Va. Code §§ 46A-6F-101 *et seq.*). Because of Defendants' severe discovery misconduct, the Court entered judgment by default and awarded Ms. Mey's full attorney's fees for both the underlying action and the baseless appeal to the Fourth Circuit.

4. The Court expressly found that Defendants (including Phillips) had acted in bad faith, violated Court orders to comply with discovery, and willfully concealed their interrelationships, a sentiment that was echoed by the Fourth Circuit in upholding the default judgment against each of them. *See Mey v. Phillips*, 71 F. 4th 203 (4th Cir. 2023), a true and correct copy of which is attached hereto as **Exhibit E**, at p. 18 ("Appellants' relentless sandbagging and failure to disclose discoverable materials, including the existence of business entities founded during the course of this case, demonstrate a continued pattern of discovery abuse that we simply cannot chalk up to inadvertence or mistake. Therefore, we agree with the district court that 'a

2

Case 3:23-ap-90125    Doc 1    Filed 12/11/23    Entered 12/11/23 15:35:03    Desc Main
Document      Page 2 of 15

finding of bad faith on the part of the defendants is easily met' in this case.") (quoting ECF 251 at p. 4).

5.  After the Fourth Circuit affirmed the judgment, the Court entered the awards for Ms. Mey's attorney's fees both below and through the appeal. This increased Defendants' joint and several liability to a total of $1,478,361.92. The Court ordered that Defendants pay forty-five days after entry of the order for supplemental fees, on or before September 11, 2023, or face an order to show cause why they should not be held in civil contempt. (Ex. C, p. 5.) Defendants made no effort to pay, but instead, all filed for bankruptcy to avoid disclosure of both their operations and liability.

**Jurisdiction and Venue**

6.  On September 15, 2023, Defendant filed a Voluntary Petition for relief under Chapter 7 of Title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Middle District of Tennessee.

7.  As of the date of this Complaint, Defendant has not been granted a discharge.

8.  This Complaint is timely, because this Court has fixed December 11, 2023, as the last date upon which an objection to discharge may be made (Docket No. 2).

9.  This Adversary Proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (J). By filing the instant Complaint, Plaintiff consents to the Court's entry of final orders or judgment as required by Bankruptcy Rule 7008.

10. This Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157and 1334.

11. Venue is proper in this proceeding under 28 U.S.C. § 1409.

**Parties**

12. Plaintiff is a resident and citizen of Ohio County, West Virginia, and is a judgment creditor of the Defendant, as described above.

13. Upon information and belief, Defendant is a resident and citizen of Williamson County, Tennessee, and is the debtor in the underlying bankruptcy case and a judgment debtor of the Plaintiff's.

**Facts**

14. As of the dates Defendants began their unwelcome phone calls, Plaintiff Diana Mey's phone numbers had been listed on the National Do Not Call registry for over a decade. (Ex. D at p. 11 ¶ 47.) By law, anyone engaged in telemarketing is mandated to "scrub" their call lists against this database to ensure that they are not phoning consumers who do not want telemarketing calls. Calling consumers who have registered in this database, or who otherwise indicate that they do not want to receive calls, imparts liability not only upon the actual call agent, but upon any party for whose benefit the calls are made. *See In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6584-93, 2013 WL 1934349, at *9-15 (May 9, 2013) and *Cunningham v. Kondaur Cap.*, 2014 WL 8335868 at *5 (M.D. Tenn. Nov. 19, 2014), *R.&R. approved*, 2015 WL 1412737 (M.D. Tenn. Mar. 26, 2015).

15. In spite of Ms. Mey's registry, which expressly indicated that she did not want to receive calls, from on or about March 6, 2018, and continuing throughout the West Virginia litigation, Defendant's agents willfully and maliciously caused over one hundred calls to be made to Plaintiff to solicit her participation in a misleading scheme to lower interest rates on her credit card debt. (Ex. A at pp. 5, 14-15; Ex. D at p. 11 ¶ 45.)

16. In making these calls, Defendant's agents willfully and maliciously violated the TCPA by initiating calls to a mobile phone using an automatic telephone dialing system (47 U.S.C. § 227(b)(1)(A)), initiating calls using a prerecorded voice (47 U.S.C. § 227(b)(1)(B)), placing calls while Plaintiff's number was listed on the National Do Not Call Registry (47 U.S.C. § 227(c)), failing to clearly identify themselves himself during calls (47 C.F.R. § 64.1200(d)(4)), and failing

to produce Do Not Call policies when requested. (47 C.F.R. § 64.1200(d)(1)). (Ex. D at pp. 16-17 ¶¶ 84-88.)

17. In making these calls, Defendant's agents willfully and maliciously violated the WVCCPA by threatening or intimidating Plaintiff with repeated retaliatory calls, abusive language, and rude hang ups (W. Va. Code § 46A-6F-601(a)) and displaying annoying, abusive, or harassing behavior (W. Va. Code § 46A-6F-601(a)(2), (3), and (5)). (*Id.* at pp. 18-19, ¶¶ 98-102.)

18. On or about January 24, 2019, Plaintiff filed an action in the Circuit Court of Ohio County, West Virginia (the "State Court action").

19. On May 16, 2019, Defendant was served with a copy of the State Court action, and timely removed the case to the U.S District Court for the Northern District of West Virginia on or about May 28, 2019.

20. In an attempt to dissuade Plaintiff and/or her counsel from proceeding with the litigation, Defendant threatened Plaintiff's counsel with baseless Rule 11 sanctions on July 3, 2019. *See* Letter from Judson Phillips to Sharon Iskra, a true and correct copy of which is attached hereto as **Exhibit F**.

21. As Plaintiff continued to investigate Defendant and his business partners, she discovered an extensive and revolving web of operations among them. These partners included others she named in her action, more particularly, John Steve Huffman and John Preston Thompson. Accordingly, Ms. Mey filed a First Amended Complaint and then a Second Amended Complaint alleging that these three individuals and their long list of entities were acting in joint enterprise and as alter egos of one another. Ex. D. Meanwhile, Defendants continued their charades not only of telemarketing, but of dissolving and re-creating shell organizations which they used to conceal their involvement.

22. On September 26, 2019, Plaintiff served her first set of discovery requests on Defendant. (Case No. 5:19-cv-185-JPB-JPM (N.D.W. Va.), ECF 19, 20.) These included targeted requests for corporate records, the various entities in which defendants did business together, financial records, and similar information. Plaintiff also sought identification of all other shared entities as well as lawsuits and government agency rulings against Defendant Phillips, his partners, and their shared entities, all of which were germane to their relationships.

23. Defendant willfully obstructed and refused to answer this discovery. On December 16, 2019, Plaintiff filed her first Motion to Compel Responses to her first set of discovery requests. (ECF 34, 35.)

24. On January 29, 2020, Judge Mazzone (the Magistrate Judge overseeing discovery) granted in part Plaintiff's first Motion to Compel. (ECF 51, amended on January 30, 2020 (ECF 52).) Magistrate Judge Mazzone also ordered Defendant to supplement his incomplete answers.

25. On March 17, 2020, Defendant served his Fifth Supplemental Responses to Plaintiff's First Set of Interrogatories. A true and correct copy of this response is attached hereto as **Exhibit G**. In his response to the Third Interrogatory, Defendant claimed he was the incorporator of the Tristar Consumer Law Organization, which changed its name to American Consumer Rights Organization ("ACRO") but had no other association with that entity. *See* Ex. G at p. 2.

26. However, in reality, Defendant had also served as a corporate officer of Tristar Consumer Law Organization before it changed its name to ACRO. *See* American Consumer Rights Organization, Documents Retrieved from Tennessee Secretary of State, a true and correct copy of which is attached hereto as **Exhibit H**, at p. 2.

6

27. Plaintiff had named ACRO, along with Phillips and many of his other entities as defendants. Plaintiff made multiple attempts to serve ACRO on and before September 18, 2020, but the official listed address was a UPS Store at which employees were uncooperative and noncommittal (ECF 127-3 at p. 6). Because she was unable to serve this entity (and others who evaded process) Plaintiff had no choice but to voluntarily dismiss them in order to move forward with her case against remaining defendants. (ECF 127). The Court granted this motion on November 4, 2020. (ECF 128, amended on November 5, 2020 (ECF 129).)

28. However, Plaintiff later discovered that ACRO did not cease operations until October 6, 2020, and therefore was operational during the extensive period in which Plaintiff had attempted service upon it. *See* Ex. H at p. 6.

29. Plaintiff served her second and third discovery requests on the Defendant on July 22, 2021, and September 1, 2021. (ECF 143, 152.)

30. Defendant once again willfully obstructed and refused to answer this discovery.

31. On October 18, 2021, Plaintiff filed her Second and Third Motions to Compel responses to the first, second and third sets of requests for production. (ECF 168, 170.)

32. While Defendants were knowingly concealing discoverable information necessary to Ms. Mey's alter ego and joint enterprise claims, they filed a motion for summary judgment hoping to exploit Plaintiff's alleged lack of evidence. (ECF 174, 175.)

33. On November 2, 2021, Judge Mazzone held an evidentiary hearing on Plaintiff's Second and Third Motions to Compel. (ECF 181.)

34. Meanwhile, Plaintiff sought a status conference on November 10 before U.S. District Judge John P. Bailey and alerted him to multiple lawsuits and governmental agency proceedings which Defendants had concealed in their responses, but which she had independently

uncovered. Defendants' counsel had no answer for this, except to say he could only act according to what his clients told him. Judge Bailey withdrew the order of reference to Magistrate Judge Mazzone with regard to the issue of sanctions and ordered Plaintiff to file her summary of the multiple items withheld by Defendants.

35. On November 17, 2021, Plaintiff filed her Supplemental Authorities in Support of Motion to Strike Defenses and for Sanctions, which documented the discovery misconduct she had described at hearing. (ECF 194.) Defendants, including Phillips, filed no response.

36. On November 18, 2021, Judge Mazzone entered an order granting Plaintiff's motion to compel in large part. (ECF 195.) Judge Mazzone ordered Defendant to revisit searches for documents and provide a detailed affidavit describing his efforts to locate relevant documents. In his affidavit, a true and correct copy of which is attached hereto as **Exhibit I**, Defendant Phillips swore that his responses were complete and correct.

37. On January 4, 2022, Judge Bailey granted Plaintiff's motion for sanctions, making an express finding that Defendant and his partners had not acted in good faith and demonstrated "a pattern of concealing discoverable material." (ECF 202 at p. 9.) Judge Bailey also noted that "defendants did not answer forthrightly, but concealed many lawsuits, investigations, and other discoverable material including financial and corporate records. In ruling upon a prior motion to compel in this case, Magistrate Judge Mazzone noted many of the same evasive tactics defendants continue to attempt." (*Id.* at 3, citing ECF No. 51.)

38. Meanwhile, Plaintiff continued her research and discovered over fifteen additional entities shared among Defendants (including Phillips) in various combinations, some of which were still active, and others of which had been formed during her litigation, but not disclosed. On February 21, 2022, Plaintiff filed her Renewed Omnibus Motion for Sanctions and Request for

8

Case 3:23-ap-90125    Doc 1    Filed 12/11/23    Entered 12/11/23 15:35:03    Desc Main
Document      Page 8 of 15

Entry of Default Judgment which detailed these. (ECF 237, 238; *see* ECF 238, specifically Tables 1 and 2 at pp. 5-7, 9-11.)

39. On April 4, 2022, Judge Bailey granted Plaintiff's motion for the entry of default judgment. (ECF 251.) He granted this extreme sanction because Plaintiff's Motion "show[ed] a wider scope of intentional discovery abuse" and "a continued pattern by defendants … [which] make it implausible that their omission was due to mistake or inadvertence," concluding that "a finding of bad faith is warranted." *Id.* at 4-5. He also found that Defendants' misconduct had prejudiced Plaintiff in the establishment of her claims. *Id.* at 5. Finally, Judge Bailey found a need to deter Defendants from future misconduct: "Through the course of this case, defendants have had multiple, repeated opportunities to rectify their conduct and have not done so. Entry of default judgment then, would serve as 'an unmistakable message to them and others that the judicial system will not tolerate repeated misconduct never wholly remedied in the future. To find otherwise would be to send the opposite message that the court may be pushed, ignored and defied to the outermost limits…" *Id.* at 5-6, *quoting Mutual Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 94 (4th Cir. 1989).

40. On July 5, 2022, Judge Bailey entered the Judgment. *See* Ex. A. Judge Bailey found that Defendants made 104 calls which violated the WVCCPA, and that each call was "separately annoying, deceptive, or abusive." *Id.* at 7, 14–15. "Defendants were on notice to stop calling and continued throughout this proceeding." *Id.* at 11. Further, the Defendants' acts were "willful and/ or knowing." *Id.* at 10. Therefore, Judge Bailey awarded the statutory maximum of $5,373.09 per call under the WVCCPA, for a total of $558,801.36. *Id.* at 15.

41. Judge Bailey also determined that Defendants violated the TCPA 180 times. *Id.* at 14–15. Finding that the violations of the TCPA were willful and knowing, Judge Bailey invoked

9

the statute's trebled damages provision, giving rise to penalties of $270,000 under that statute. *Id.* at 15. He entered a total combined penalty award of $828,801.36.

42. As indicated above, rather than pay the judgment due, Defendants filed a baseless appeal to the Fourth Circuit, which allowed them to continue operating and profiting from their schemes while necessitating more work by Mey's legal team. On June 23, 2023, the Fourth Circuit affirmed Judge Bailey's entry of default judgment in its entirety. *See* Ex. E at pp. 6, 23.

43. On June 29, 2023, Judge Bailey granted Plaintiff's motion for attorney's fees in the full amount requested for pre-appeal work, four hundred forty-eight thousand, five hundred ninety-five dollars ($448,595.00), and directed her to file a Supplemental Petition to capture fees associated with her appeal. *See* Ex. B at p. 15.

44. Upon review of this petition, Judge Bailey awarded Plaintiff's additional fees and expenses in full, in the amount of two hundred thousand, nine hundred sixty-five dollars and fifty-six cents ($200,965.56) by order dated July 26, 2023. *See* Ex. C at p. 6.

45. Judge Bailey allowed Defendants forty-five days from his Order in which to make payment on the judgment and the fee awards, and expressly stated that Plaintiff could re-open the case by an order to show cause why Defendants should not be held in civil contempt of court if they failed to pay. *Id.* at 5.

46. Rather than making any effort at payment, and in a maneuver Plaintiff submits is designed to evade liability once again, Defendant filed for bankruptcy on September 15, 2023.

47. On his Statement of Financial Affairs, Defendant swore under penalty of perjury that he had fully disclosed his interests. (ECF. 1, p. 41.) Yet Defendant failed to list his position as Director of Consumer Debt Advocates, Inc. after its reinstatement as of January 7, 2020, in his

Statement of Financial Affairs. (*Id.* at pp. 40-41.) *See* Certificate of Comparison for Consumer Debt Advocates, Inc., a true and correct copy of which is attached hereto as **Exhibit J**, at p. 16.

48. Defendant has also represented publicly that he has been Chief Executive Officer of an entity called "Counterpart Capital" since March 2022, and that he was CEO of Capital Compliance Group CO from July 2018-March 2022. *See* LinkedIn page of Jud Phillips, a true and correct copy of which is attached hereto as **Exhibit K**. According to Tennessee Secretary of State records, Capital Compliance Group CO was active until October 11, 2021. *See* Capital Compliance Group Filing Information, Documents Retrieved from the Tennessee Secretary of State, a true and correct copy of which is attached hereto as **Exhibit L.** But Defendant Phillips failed to disclose either of these organizations in his Statement.

49. Defendant also failed to list his lawsuit with Ms. Mey in his Statement of Financial Affairs, despite the Fourth Circuit decision being rendered on June 23, 2023. *See* Ex. E.

50. In addition, Defendant failed to list that he was a named defendant in Fuentes *v. Enhanced Recovery Servs. 2*, No. 1:22-cv-317-JRN (W.D. Tex.) (filed Apr. 5, 2022) and was a party in that litigation for over a year before being terminated on May 1, 2023. *See* Docket Report of Case No. 1:22-cv-JRN (W.D. Tex. July 5, 2023), a true and correct copy of which is attached hereto as **Exhibit M**.

**Count I**
**Nondischargeability Under 11 U.S.C. § 727(a)(4)(A)**

51. Plaintiff re-alleges and reincorporates the allegations contained in the preceding paragraphs as if fully restated herein.

52. 11 U.S.C. § 727(a)(4)(A) provides that "[t]he court shall grant the debtor a discharge, unless— . . . (4) the debtor knowingly and fraudulently, in or in connection with the case— (A) made a false oath or account[.]"

53. The Defendant knowingly and fraudulently made a false oath in his Statement of Financial Affairs because he failed to list his involvement with the above-described entities and litigation.

54. The Defendant swore fraudulently because his omissions created the false impression he had no role with these organizations and was not involved in any recent litigation. The Defendant's fraudulent concealment of this role continues his longstanding pattern of refusing to fully disclose his interests and legal involvement, as detailed above.

55. Alternatively, the Defendant's oath was made with reckless disregard for the truth of his disclosures.

56. The oath is material because it relates to the Defendant's business transactions and concerns the discovery of assets, business dealings, and the disposition of the Defendant's property.

57. The Defendant's knowing and fraudulent false oath warrants a denial of his discharge under 11 U.S.C. § 727(a)(4)(A). Plaintiff also respectfully moves for an award of attorney's fees and costs of suit under Bankruptcy Rule 7054, as well as any other relief the Court deems just and proper.

**Count II**
**Nondischargeability Under 11 U.S.C. § 523(a)(6) and § 523(c)(1).**

58. Plaintiff re-alleges and reincorporates the allegations contained in the preceding paragraphs as if fully restated herein.

59. 11 U.S.C. § 523(a)(6) excludes from discharge any claim "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(c)(1) requires a creditor to request that a debt under § 523(a)(6) be excepted from discharge, which the Court must determine after notice and a hearing.

60. Plaintiff is an entity within the meaning of 11 U.S.C. § 101(15).

61. Defendant willfully and/or maliciously harmed Plaintiff by placing, or causing to be placed, threatening, abusive, annoying, harassing, and deceptive calls in violation of the TCPA and WVCCPA. Agents called Plaintiff even though she had registered on the Do Not Call registry expressly indicating that she did not want telemarketing calls. Many times, the agents called Plaintiff repetitively, or refused to identify themselves or produce their do not call policy as required by law. They often sat in prolonged silence on the line, refusing to speak to Plaintiff, or hung up on her in retaliation for her refusal to make a purchase. (Ex. D at p. 14 ¶¶ 64-66). Plaintiff continued to receive calls after she requested on nine separate occasions that Defendants or their agents stop calling. (*Id.* at p. 15 ¶¶ 72, 73.) She also had to cancel her credit card upon alert by her company's fraud department that someone was trying to access her account shortly after one of Defendants' calls. (*Id.* at p. 14 ¶¶ 67-70.) These facts, coupled with the volume of the calls, some 180 violations of the TCPA and 104 violations of the WVCCPA, all demonstrate Defendant's intent to harm Plaintiff. Alternatively, Defendant was substantially certain that Plaintiff would be harmed through the acts of his agents for the above reasons.

62. Shockingly, Defendants or their agents did not stop the calls even after Ms. Mey had initiated legal proceedings against them seeking relief for illegal telemarketing, which further illustrates willfulness and/or malice. (*Id*. at p. 15 ¶ 78.)

63. Defendants further maliciously harmed Plaintiff by persisting in that same deception in litigation before Judge Bailey, first by discovery misconduct; then by seeking summary judgment while concealing evidence of their interrelationships and facades; then by concealing some fifteen additional entities from discovery (some of which were actively formed during the litigation); then by falsely swearing that all had been disclosed; then by refusing to pay

13

Case 3:23-ap-90125    Doc 1    Filed 12/11/23    Entered 12/11/23 15:35:03    Desc Main
Document    Page 13 of 15

the judgment; then by filing a meritless appeal designed only to further obfuscate payment and create delay to Mey's detriment while they continued to operate and profit; and now attempting to avoid clear liability and absolve themselves from court sanctions through a discharge in bankruptcy. All of this has in fact harmed Plaintiff by extending litigation and increasing her legal fees and expenses. To date, Defendants have paid nothing of the judgments or fee awards.

64. Plaintiff seeks a judgment against Defendant that the Plaintiff's claims derived from the Northern District of West Virginia Court Judgment, in the amount of $828,801.36, and from the Attorney Fee Awards, in the total amount of $649,560.56, are nondischargeable under 11 U.S.C. § 523(a)(6) and § 523(c)(1). Plaintiff respectfully moves for an award of attorney's fees, costs of suit, and any other relief the Court deems just and proper.

**Prayer for Relief**

**WHEREFORE**, Plaintiff respectfully moves for this Court to enter, in favor of Plaintiff and against Defendant, a judgment that the Defendant's debts are nondischargeable under 11 U.S.C. § 727(a)(4), or alternatively, that the Northern District of West Virginia Court Judgment of $828,801.36 and the Attorney Fee Awards totaling $649,560.56 are non-dischargeable under 11 U.S.C. §§ 523(a)(6) and (c)(1). Plaintiff also respectfully moves for attorney's fees and costs of suit under Bankruptcy Rule 7054, as well as any further relief that the Court deems just and proper.

Dated: December 11, 2023

/s/ Justin T. Campbell
Justin T. Campbell (TN Bar No. 031056)
THOMPSON BURTON PLLC
1801 West End Avenue, Suite 1550
Nashville, TN 37203
Telephone: 615.456.6015
Fax: 615.807.3048
Email: justin@thompsonburton.com

Sharon F. Iskra (*pro hac vice forthcoming*)
Daniel M. O'Hare (*pro hac vice forthcoming*)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
Email: siskra@baileyglasser.com
Email: dohare@baileyglasser.com

*Attorneys for Plaintiff Diana Mey*